Good morning all. Our first case this morning is Frye v. Auto-Owners Insurance Company. Mr. Anderson. May it please the court, this case involves two significant issues relating to Indiana code 27752 requires insurers who agree to provide commercial umbrella UIM or underinsured motorist coverage to provide that coverage in an amount equal to the liability limits. The second is whether or not the workers' compensation in this case, whether the set Since we have a little bit of time, I'd like to discuss a little bit of the case. You're not constitutionally required to take all of it. I understand, but I will keep it all relevant. We've allotted it, but it's not a mandate. That's right. Sometimes less is more. If you don't have any questions, I'm good. I'll rest on the grave. Back when you sit down, right. I'm sitting here talking after five minutes, I'll rest. Anyway, so this case really, it's about an evolution of how this law has worked in Indiana. There are two significant issues, both the statute I've already cited, I'll just call it the UIM statute, and the case of Depresio, which came out in around 1999. The case of Depresio is a significant case in Indiana and interpreting insurance in law in Indiana. Basically, the ruling held that an excess policy, whether it's an automobile policy or not, has to comply with Indiana's UIM statute. But what it really did also was to create a policy of let's find the coverage. Let's find application. Let's find a way to make insurance apply and coverage apply rather than not apply. And that really is your major argument here, that Indiana's statute is a mandatory coverage, full recovery, remedial statute. So how do you reconcile this with the legislature's clear language that certain policies are exempt from the statute's uninsured and underinsured motorist insurance requirements? And that's our point as well. And I will do that. It's just going to take a little bit of time. The sooner you can get to my question, that would be helpful. Sure. Well, the short answer to that is that the way that the statute has evolved over time shows that once you provide coverage, once the UIM umbrella provider gives coverage, that they're required to give that coverage in limits equal to the UIM coverage and limits equal to the liability limits. That's the short answer. Subsection D came along after DePrizio. Subsection D of the statute basically says that commercial umbrella liability policies are not obligated to provide the coverage listed in subsection A. And subsection A is what makes all the mandates that you have to provide UIM limits the same as liability limits. So subsection D said, well, you commercial UIM liability providers, you don't have to do that. You don't have to provide that coverage. The statute itself, however, is silent when it comes to what happens when the insurance company actually decides to provide coverage. And then that coverage is not waived. And one could say, and I believe the district court did this, what the district court was to interpret that silence to mean that it doesn't have to do anything that subsection A requires, even though subsection A says coverage. It does not say coverage in limits. It does not say you can, you know, you have, subsection D, I should say, does not say you can make whatever kind of limits you want. Now, legislative. D applies to commercial policies. Yes, correct. But what happened was, and what essentially cleared the air on this, was subsection H, which was then added in 2013. Subsection H applied to personal commercial, I'm sorry, personal umbrella UIM policies. And legislature said, all right, if you provide a personal umbrella UIM policy, if you decide to provide that coverage, even though you don't have to, if you do that, then you can, you can decide whatever limits you want to do. It says that clearly and explicitly under subsection H. And that goes back to the language also in D'Aprezio. What D'Aprezio basically said was, there has to be an express directive of exemption. That's language you'll find in both briefs. There has to be an express directive by the legislature that this statute does not apply to you. And subsection D, as it relates to commercial policies, is silent. And what the district court did was, it took that silence as, well, we're just going to apply that to all things. We're going to apply that to coverage, but we're also going to apply it to limits. But the statute is silent as to what happens once coverage is issued. And there's no dispute that coverage was issued here. There's no dispute that a UIM policy was provided. It was just provided at 1 million rather than 5. And the limits, obviously, were 5 million in this case. So our contention is that it should be 5 as well. So once you have that express directive there, or like subsection H does, you can't go back and read subsection D the way the district court did. So if we play it out to its logical end, OK, so the district court essentially ruled that subsection D states that, we'll read subsection D to mean that the insurer can adjust the limits however it wants to, even if they provide coverage, even though they don't have to. Now subsection H, which was later added, says, like I said, that exact same thing. It says that, but it only relates to personal umbrella policies. It does not give what we call that express directive of exemption to commercial UIM umbrella policies. So since it does not do that, if we play it out to its logical end, the way the district court reads subsection D would be to mean the exact same thing as subsection H, even though subsection H says more. Did you make this argument to the district court? Yes, it was made to the district court. It was dismissed out of hand, essentially, with respect to the district court, saying that personal UIM policies, umbrella policies, were just that, personal, and therefore was distinguishable, which we disagree with, obviously. In fact, that's our point. It is distinguishable. The fact that personal umbrella policies can do this, but commercial policies are not given explicit permission to do this, is exactly what makes them distinct. So the argument was made, but I don't think it was, I don't think the ruling was correct, obviously. Now, as far as, and one other thing that the district court did, one other argument that we made was, I think it almost, in a sense, confused the terms coverage with coverage and limits. Those are two terms that are really, sort of what the district court did was say, well, you don't have to provide coverage, we're going to take that to mean, or the court took that to mean, that we're not going to provide, and that relates to coverage limits, limitations in coverage, everything. So, when those two, and that would be all well and good, I should say, but it doesn't make sense when you read it in conjunction with subsection H. And this, again, goes back to how we read statutes in Indiana, how we read these policies in Indiana. The statute itself is part of the policy in Indiana. So it's read in there. So it would override the coverage amount, if we receive a favorable ruling. And we would also, but I mean, the statute itself would provide coverage here, so I apologize. Okay. But either way, the history of Indiana case law, and the history of these statutes, I think overwhelmingly shows that there's a decision to be made here in favor of coverage. I don't think the district court got it right when it said that we're not going to, that we're going to interpret it, or call it distinctive because of personal umbrella policies. And that was really the only hook, and the only rationale for the district court's decision. Now as to the workers' comp set-off, that's a little bit trickier, and that's just a matter, I think, of mostly policy interpretation, but also an issue of, some issue of public policy. Now there's two, there's two prevailing points here. One is that, or two possible interpretations. So the set-off basically says that any amount paid by workers' comp insurance is then, which is in excess of the retained limit, is deducted from the overall limit of the policy. And retained limit is not defined as an amount that is paid. It's defined as a number. So retained limit in this case was $1 million. Now our position is that this is an ambiguous provision. You can read that to mean that, does retained limit mean $1 million that's paid, or, and then therefore any amount that's paid above that? Or does it mean, or is it just setting an arbitrary figure? You have a retention limit, or retained limit, of $1 million, and anything that goes beyond that, that's when the set-off starts. So, I believe it's an ambiguous provision, and again, if there's ambiguities, reasonable ambiguities where reasonable minds can differ on these things, that has to be construed, again, in favor of the insured. But the reason I, the reason I would say that it's mainly ambiguous is that, in order for the policy to do what auto owners suggest it does, is that you would have to read retained limit to be something that was already paid. In other words, we're not saying that, retained limit here is just an arbitrary figure. It's not something that actually is paid to come into effect. And it's couched in terms of limits, not limits paid. And that's an important distinction, because if you're just saying, okay, well, any amount that you pay over $1 million is then deducted from the top of this, that's fine. And that's our position. But if you're saying that any amount that's automatically paid apart from the underlying million, that's completely different. So I believe that there's an ambiguity there with respect to where we set that benchmark. Do we set it at zero, or do we set it at $1 million? And a reasonable interpretation can be made for both, but I think it's even more reasonable to interpret it in the manner that we suggest. And just from a policy perspective as well, workers' compensation benefits we don't think that should be applied under justice because workers' comp benefits, and this is kind of a novel argument, they're different from liability benefits and UIM benefits under Indiana law. So you're basically, in a sense, when you're taking off this excess the way it is, you're basically swapping out less coverage for more. Because a work comp only covers medical, some partial loss wages, partial disability, whereas damages that emanate from an injury are far more expansive than that. So really what they've done is they've provided less coverage for less injuries than more. As far as the damages that we get from liability cases, or from injury cases, those go anywhere from lost wages, lost future wages, loss of consortium, disfigurement, etc. So there's a very significant distinction between the two, and I think it's laid out in our brief. So if there are no further questions, I'll rest and wait for rebuttal. Reserve my time for rebuttal, please. Thank you, Mr. Anderson. Mr. Wheeler? Good morning. As council indicated, there are two basic issues in this case, whether the umbrella under insured motorist limits are $1 million, as the declaration pages identify, or $5 million, under the prize argument. The second issue is obviously whether auto owners can set off the workers' compensation amount from the under insured motorist limits of the umbrella policy. We believe the district court got it right on both accounts in granting summary judgment in favor of auto owners. Turning to the first issue, the statute at issue here is really the 2009 amendment to the UIM statute, which is 27752. The July 2009 amendment is in subsection D. Subsection D states an insurer is not required to make available the coverage described in subsection A of the statute. The key term is coverage described. When we turn to subsection A, subsection A identifies all the coverages and requirements under the UIM statute. The coverages described include the minimal limits pursuant to the liability statutes of Indiana. The coverage described includes that the UIM limit must be at least equal to the liability limit. The coverage described also includes a minimal limit of $50,000 for any underinsured motorist policy. Those are all the coverages described in subsection A. When the legislature enacted in 2009 section D, it exempted commercial umbrella carriers from all of those coverages described. According to its autonomous position, that once that statute took effect in 2009, it no longer, as an umbrella carrier, was required to provide any of those coverages described in subsection A. That would include providing underinsured motorist coverage in limits at least equal to liability limits. So we think the language itself is very important. We believe the language here to be clear and unambiguous in this matter. Nowhere in the statute does the legislature instruct that portions of subsection A are exempted. There's nowhere in the statute that states that some of the requirements still apply to umbrella carriers. Nowhere in the statute does it require specifically that underinsured motorist carriers provide equal limits after the promulgation of the 2009 amendment. Rather, the 2009 amendment merely states that insurer is not required to make available the coverage described in subsection A. Not portions of it, not some of it, all of it. We believe the district court got that right when it determined that auto owners no longer had to provide UIM coverage in limits equal to the liability policy after the 2009 amendment went into effect. In effect, to read the statute as the Fries would have the court read it, would basically discourage umbrella carriers from providing underinsured motorist coverage because they have two choices according to the Fries. Either don't provide it at all and you're fine and you are in compliance with the statute or provide it with limits at least equal to the liability. I would imagine that most carriers would opt to not provide it at all and therefore they would not be in violation of the statute according to the Fries. I think that would be counter to the legislative intent. The legislative intent would be to encourage insurers to provide coverages. So when it changed the statute here, it basically said if you are an umbrella carrier, you don't have to provide coverage for uninsured motorist at all. And if you want to provide it, you can do it in any limits you want to. There's no prohibition against that. So again, we think the district court here got the  correct. We also believe that the legislative history of the evolution of this statute, of the patterns positioned here, up until the DiPrezio case. In fact, never before the DiPrezio case did the legislature ever make any rule or any statute regarding umbrella policies and whether they had to comply with the underinsured motorist statute. The language in the prior statute before it was amended just said auto policies had to provide coverage. So DiPrezio, the Supreme Court of Indiana, in looking at whether an umbrella commercial policy has to comply with the statute, said, well, the legislature hasn't said one way or the other, so we're going to assume it should be covered. Unless, the court gave us a caveat, unless the legislature expressly tells us that we're wrong, basically. That our interpretation is incorrect. And that's exactly what happened. In 2005, the legislature amended the statute by passing Indiana Code 27751.5, which expressly exempted out commercial and excess umbrella policies from the UIM statute. Basically, undoing the DiPrezio ruling. Because DiPrezio had, in fact, invited the legislature to provide the express directive, and it did so. The legislature went one step further, and in 2009, enacted what we're currently, paragraph D. And in that particular incarnation, it actually put the exemption within the UIM statute itself. And again, it was addressing DiPrezio and giving now the express determination from the legislature that it did not anticipate or expect umbrella carriers to provide UIM coverage in any way, shape, or form. So we think that, and then in 2013, the legislature did one more step and then exempted personal umbrella policies from the statute. So we have an evolution here of the legislature giving an express directive basically telling us that umbrella carriers are no longer required to provide underinsured motorist coverage at all, or at any amount whatsoever. So we believe our interpretation, Alderman's interpretation of the statute, and the U.S. District Court's interpretation of the statute is consistent with the legislative history as identified in the statutes they enacted after the DiPrezio case. Mr. Wheeler, with regard to D, subsection D, exempting the commercial policies, is there anything in the language of that that indicates an intent to allow the commercial umbrella policies, to the extent they choose to provide it, to do it in any manner they wish? Not expressly. What it says is D exempts umbrella carriers from the coverages described in subsection A. It's a very broad statement. So you have to go to subsection A and you look through all the coverages that are described in subsection A, and there's quite a few. But the simple language of D exempts the coverage described. So we believe the district court was correct in saying that that exempts all of the language of subsection A as applied to commercial umbrella policies. Certainly all of subsection A would still apply to regular commercial policies. It would also continue to apply to personal policies, and it still does to this day. Subsection D just exempted all of subsection A requirements from umbrella policies. The next issue raised by the raised today is whether auto owner's umbrella policy allows for a set off of workers' compensation benefits. Again, this is an element of statutory contractual construction. The language at issue I'll try to truncate it a bit here, but it basically says our limit of liability, which is the UIM limit under the policy, shall be reduced by any amounts paid under workers' compensation which are in excess of the retained limit. Here the policy defines the retained limit as the underlying policy, which has a million dollars in limits. The amounts, we don't believe that language is ambiguous or unclear at all. The phrase, which are in excess of the retained limit, basically means those amounts that are above and beyond the coverage limit that's already been paid. Here,  We know that 100,000 of that amount was paid by the underlying tort carrier. Then 900,000 was paid by auto owners under its commercial auto policy. And there we have the one million in retained limits. That's already been taken care of. The workers' compensation benefits that are at issue here total approximately $617,000. That amount was not part of the one million previously paid. It's not part of the retained limits. It was not subject to any other set off. So the work comp amount that's paid is in excess of that retained limit. It's above and beyond the amounts that have already been paid. Our language allows a set off for any amounts paid that are in excess of the retained limit, or in excess of the one million that's already been satisfied. Because the work comp amount is above that amount, is greater than what was already paid below, a set off is then allowed. And in fact this makes sense when you think about the concept of UIM coverage. In Core v. American Family, which is an Indiana Supreme Court case at 767 Northeast 2nd 535, the court said that the purpose of UIM coverage is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of insurance. It also says that a full recovery statute will not necessarily assure full indemnification for all potential damage to all potential defendants. So if you think of UIM coverage as basically a safety net where an insured is entitled to a recovery up to the amount of the underinsured motorist limit, but that amount can come from any source. It can come from other policies or other liability carriers, as long as the total amount reaches that number. If the other carriers or other sources are minimal, then the UIM policy pays more. If the other coverages are higher, the UIM policy pays less. Because the goal is to make sure that the claimant, the insured, as long as the evidence allows, satisfies that threshold amount of $2 million. And here that's what's worked out. Because we have really $2 million in UIM coverage through auto owners. We had $1 million under the commercial auto policy, which is below the underlying policy here. We have $1 million in the umbrella policy. We have $100,000 that was paid by the tortfeasors carrier. We have $900,000 that was paid by auto owners under its commercial auto policy, which is now $1 million. The workers' compensation amount, which we believe we can set off, has already been paid by the work comp carrier. That's $617,000. And then auto owners has paid the difference under its umbrella UIM policy of $383,000. When you add those numbers up together, the insured here has received $2 million. And that's the amount of total underinsured motorist coverage available through auto owners when you add the two policies together. So the purpose of the UIM concept is satisfied here by these payments. Lastly, certainly setting off amounts from an underinsured motorist policy is not in and of itself against public policy. There's probably hundreds of cases cited in the Indiana courts allowing set-offs for work comp and for other methods throughout. Council cited the Justice case, Justice v. American Family, which is another Indiana Supreme Court case, which I think both parties have cited it to in their briefs. The Justice case didn't say that workers' compensation set-offs were against public policy globally. It just said in that particular case it was. Because in that case, the issue was whether reducing or allowing a set-off would reduce the insured's recovery below the minimal statutory limits of $50,000. What had happened in that case was there was the statute required $50,000 in statutory benefits. The tort fees' limits were $25,000, which were paid. The work comp had paid $71,000. The UIM carrier in that case said, we want to set-off the full $71,000 from our UIM policy, which would reduce their UIM policy limits to zero. The court said you can't do that because when you do that, the insured only has available $25,000, not the full $50,000. Because $50,000 is what's statutorily required, you have to give that to them. The court in that case required the UIM carrier to pay $25,000. That way the tort fees' carrier paid $25,000, the UIM carrier paid $25,000, the $50,000 in UIM statutory benefits was then satisfied. Here we don't have that. Here, when the accident occurred in January of 2011, the statutory minimum was $50,000. Well, here, the underlying tort fees' policy was $100,000. That was already paid to the $50,000 threshold. Therefore, using the set-off in this case in the auto owner's policy is certainly not against public policy and it's certainly consistent with the purpose of underinsured motorist coverage. For those reasons, we believe the district court was correct in its decision in granting summary judgment on both issues in favor of auto owners and we would ask this court to ratify the same. Thank you, Mr. Wheeler. Mr. Anderson. Thank you. A couple of points briefly. As to the first point on the first issue, nothing in the way the statute is written now would authorize auto owners to do what it's trying to do here. Again, under D'Aprezio, it's only if you are expressly and explicitly exempt from complying with the statute are you allowed to form a sort of end around it. The statute speaks in terms of exemption only in coverage as far as subsection D goes. Subsection H says, okay, when you do provide coverage, you are allowed to do this and you are allowed to change the limits. The way that it's being interpreted now is simply not a way that it could be applied. If it were silent, maybe it would be up for debate. And every Indiana case out there speaks in terms of coverage. Every Indiana case has debated this, says, okay, there's no coverage here, fine, or you don't have to provide coverage. Nothing addresses what happens when you do decide to provide coverage. When you waive your right not to provide that under statute. Statutory silence is not construed in favor of the insured here either. Again, there has to be an express directive. If there is silence, it cannot, it would be construed in favor of the insured, in favor of coverage, in favor of recovery. As far as the set off goes, nothing in that policy mentions liability amounts paid. And I want to pay particular attention to the definition of retained limit. Retained limit under the policy means, quote, the greater of the highest applicable limits of liability of any and all underlying policies, or $500,000. So, that language is very clear. It's not the greater amount of amounts paid. It's just the greater amount of retained limit. Is it $500,000 or is it something greater? That's all we say. Where does this figure begin? There's nothing about amounts paid. There's nothing in anything within the policy defining it any different. And so, when you have that ambiguity, when you can interpret it reasonably in our favor, that has to be construed in favor of coverage, in favor of the insured. As far as policy goes, under justice, our Indiana Supreme Court made clear that there's an intent by our legislature to give insurers the opportunity for full compensation for injuries inflicted by financially irresponsible motorists. That is not what's happening in this case. In this case, Mr. Fry purchased a great deal of insurance coverage in his business, Tri-City. He purchased an umbrella policy. He purchased underlying coverage. And he purchased work comp insurance. And since he paid for more insurance, he's getting less coverage now. And that simply flies in the face of the policies of Indiana. And for those reasons, we would ask that the district court's decision to grant summary judgment be reversed and the case remanded accordingly. Thank you. I thank you, Mr. Anderson. Thanks to all counsel. The case will be taken under advisement.